55 So.2d 289 (1951)
GIVENS et al.
v.
TOWN OF RUSTON.
No. 7743.
Court of Appeal of Louisiana, Second Circuit.
November 30, 1951.
Rehearing Denied December 15, 1951.
*290 A. B. Guthrie, Monroe, for appellants.
Walker & Wright, Ruston, for appellee.
TALIAFERRO, Judge.
Plaintiffs, Mrs. Sallie P. Givens and her two sons, W. P. and Allen T. Givens, owners of Lots One and Four of Block Twenty-Five (25) of the Stubbs Addition to the Town of Ruston, Louisiana, instituted this suit against said town to recover a large amount of damages assertedly due them because of the allegedly negligent and wanton action of its officers, agents and employees, in September, 1947, in trespassing upon their said property and sawing, cutting and stripping off the limbs from nine (9) large shade trees growing thereon; that due to the denuding of the limbs from said trees, they have become an eyesore, and will eventually die; that said alleged trespass occurred while the occupant of the residence on said lots, Mrs. Givens, was absent, and over the protest of friends.
The elements of damage alleged upon are:
Depreciation in value of the property, $2,000.00; and on behalf of Mrs. Givens alone, because she "has suffered and continues to *291 suffer distress and mental pain and anguish", the sum of $2,000.00.
Defendant admits that during the night of September 19th-20th, 1947, on account of a windstorm of high velocity, many limbs were torn from trees in the town, particularly around plaintiffs' property, and as a result, its electric wires of high and lower voltage were broken down and dislodged from their fastenings to such extent that practically all, if not all, of the town was put in a state of total darkness; that because of this condition an emergency existed which its agents and employees sought promptly to correct, and in doing so many broken limbs and others not broken, were removed from the stately trees that adorn the streets of the town; that its agents and employees, during said night and the morning following, did climb plaintiffs' trees and did remove therefrom all hanging and disconnected lodged limbs, and also all green ones that were then threatening or which it was thought would threaten the efficient functioning of said electric wires in the future; that in removing the limbs from plaintiffs' trees, due care was exercised by its agents and employees to the end that none be unnecessarily so treated; that in its proprietary capacity it supplies, not only the residents within its borders, desiring same, all needed electricity, but also to dairies, residences and other places without its territorial limits; that its legal duty requires it at all times to exercise the diligence necessary to maintain its electric light system in a high state of efficiency in order to supply its customers with needed current.
Defendant also alleged and proved that no limbs were removed from the sides of said trees nearest to plaintiffs' residence, and that all the stumps were painted or otherwise treated to prevent insects, bugs, etc., from infesting them; that notwithstanding the efforts of its agents and employees in the respects mentioned above, to guarantee unbroken electric current over the wires about plaintiffs' property, since that time, other limbs from their trees have fallen upon said wires and broken same, resulting in temporary discontinuance of current to its many customers in that part of the town. Defendant denies that its agents and employees acted negligently and/or wantonly in cutting and removing said limbs, but in the utmost good faith. It prays that plaintiffs take nothing by this suit.
The demands of plaintiffs were rejected and they appealed the case to the Supreme Court. That Court ruled that it did not have jurisdiction of the case, and transferred same to this Court. See 219 La. 672, 53 So.2d 833.
The Supreme Court held, and properly so, that no testimony whatever was adduced to prove "the decreased value of the lots or property because of the alleged act of the defendant". It also found and held that the only proof in the record of the actual amount of damages suffered by any one of the plaintiffs is the testimony of one of them, Mrs. Givens, that she had sustained $2,000.00 damages in "tears", because of the removal of the limbs. Therefore, it is made clear that insofar as concerns Allen T. Givens and W. P. Givens, they are eliminated from the case. It is worthy of note that neither of these plaintiffs testified in the case. Neither lives in the Town of Ruston. This leaves for consideration only the damage claim of Mrs. Givens because of "distress and mental pain and anguish".
There is practically no conflict in the testimony. Defendant has proved the allegations of fact of its answer.
It is well established by the jurisprudence of this state that if a trespass of the character herein alleged is committed, damages are recoverable for anguish, disappointment, mortification and other mental sufferings, the measure of which is not susceptible of definite proof. Oglesby v. Town of Winnfield, La.App., 27 So.2d 137, and cases therein cited.
But, of course, the unlawfulness of the action of those who remove the limbs must be clearly established, and it must be of such character and of such magnitude as would reasonably be calculated to cause the owner mental distress, pain and discomfort.
The trees in question are over forty (40) years of age. They are all on plaintiffs' land and are rather large. The limbs extend over the property lines, and into the lines of electric wires on cross-arms attached *292 to poles that rise to heights of from twenty-five (25) to thirty (30) feet above the ground. These limbs, as time passes, grow larger and longer, with increasing possibility to do damage to the wires by friction. This could and does arise from constant vibration of the wires and swaying of the limbs against them, resulting in short circuits and temporary discontinuance of current.
In the present case, as alleged, the limbs that were cut and removed grew from the side or sides of the trees farthest from the residence. Pictures taken of the trees after the leaves had fallen disclose some unsightly stumps that remained, but pictures taken after new foliage had grown, show healthy, symmetrical trees that produce about as much shade as formerly. The ends of the stumps having been painted, the process of healing appears to be satisfactory. None will die.
The Oglesby case, following cases decided by the Supreme Court, recognizes the right in a municipality that provides electric energy for consumption by its own citizens and others, in instances of emergency, without resort to court, to take all reasonable means to quickly relieve the emergency, and the character and extent of such means, of course, depend upon circumstances and conditions of the particular case. All of which acts and deeds must, of course, be done in the utmost good faith.
The testimony of the town's agents and employees puts at rest any question of their good faith and honesty of purpose. They admit that in the effort to quickly restore current throughout the northwestern part of the town, and to prevent a repetition of the then existing conditions, should another storm occur, they did cut and remove some unbroken limbs, which were either so close to the wires, or actually contacted them in such way as to be a constant hazard to dependable current; and, as said before, the general outline of the trees has not been materially affected, particularly when they are in full foliage.
The facts of this case are not nearly on all fours with those of the Oglesby case and others cited therein. In the Oglesby case the most stately tree of the yard was stripped of all limbs, of which there were many, for twenty (20) feet on one side and thirty (30) feet on the other. The trunk of the tree for thirty (30) feet was stripped of stately, spreading limbs, and recurring springtime added no beauty to its ugly nakedness. There is no comparison between the appearance of this tree and either of those involved in the present case. In the present case nearly all of the limbs cut and removed were among those that constituted the bushy or upper portion of the trees.
We are constrained to agree with the Lower Court and to hold that the Town acted within its rights in cutting and removing the limbs of which complaint is made.
For the reasons herein assigned, the judgment from which appealed is affirmed with costs.
KENNON, J., not participating.